262 F.2d 741
 ROYAL OIL CORPORATION, a corporation, and Alden C. Jocelyn
and Joseph A. Inciardi, individually and as
officers of Royal Oil Corporation, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 7693.
 United States Court of Appeals Fourth Circuit.
 Argued Oct. 16, 1958.
Decided Jan. 5, 1959.
 
 Joseph S. Kaufman and Harry D. Kaufman, Baltimore, Md., for petitioners.
 E. K. Elkins, Atty., Federal Trade Commission, Washington, D.C. (Earl W. Kintner, Gen. Counsel, and James E. Corkey, Asst. Gen. Counsel, Federal Trade Commission, Washington, D.C., on brief), for respondent.
 Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BRYAN, District Judge.
 SOBELOFF, Chief Judge.
 
 
 1
 The petitioner, Royal Oil Corporation, is engaged in the general petroleum business and, among other activities, reclaims and markets used crank case oil drainings discarded by motorists at service stations. After impurities are removed, the oil is of high viscosity and good quality, comparable to oil that has not been previously used. The finished product is then packaged and sold in cans marked plainly and in large type 'Reprocessed Oil.' The Federal Trade Commission, however, has ruled that the labels on the cans did not sufficiently inform the public of the nature of the product. Royal and its officers, the individual petitioners, were ordered not to advertise such oil, or offer it for sale, without disclosing that it had been previously used. This proceeding is to review the Commission's order.
 
 
 2
 Twenty-one states have enacted legislation regulating the sale of previously used motor oil. North Carolina has a statute which requires that containers of reclaimed used oil be clearly marked 'Reprocessed Oil.'[1] While Royal's plant is located in Baltimore, Maryland, and it sells oil in South Carolina, Virginia and Maryland, the words required by the North Carolina statute have been added to its labels because the company sells principally in that state.[2]
 
 
 3
 * The petitioner's position is that since its labels are in compliance with the North Carolina law, the Federal Trade Commission has no authority to require any other disclosure. The company's argument is that Congress has not entered the field of regulation, and that therefore the Commission may not nullify a valid state statute.
 
 
 4
 We think this argument unsound for two reasons. First, while Congress has not specifically designated what disclosures must be made when reclaimed used oil is sold in interstate commerce, it has clothed the Commission with the power to enjoin unfair business competition. 15 U.S.C.A. 45. Unless Congress specifically withdraws authority in particular areas, the Commission, upon its general grant of authority, can restrain unfair business practices in interstate commerce even if the activities or industries have been the subject of legislation by a state. United States v. South-Eastern Underwriters Ass'n, 1944, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440; McCarran-Ferguson Act, 15 U.S.C.A. 1011-1015; Federal Trade Commission v. National Casualty Co., 1958, 357 U.S. 560, 78 S.Ct. 1260, 2 L.Ed.2d 1540; 66 Stat. 632, exempting from the antitrust laws agreements to fix prices made under State Fair Trade Laws, 15 U.S.C.A. 45(a). If the Commission determines upon a reasonable basis that certain conduct constitutes an unfair method of competition, it may order those responsible to cease and desist even if the conduct is authorized by state law. Chamber of Commerce of Minneapolis v. Federal Trade Commission, 8 Cir., 1926, 13 F.2d 673, 684.[3]
 
 
 5
 While the existence of a fairly uniform legislative judgment among the states, that the use of certain words sufficiently discloses the nature of a product, would be a circumstance for the Federal Trade Commission to consider, it would not be bound by the judgment prevalent in the states. If the Commission concluded that a more precise description was necessary to avoid public deception, it could lawfully go beyond the states' requirements.
 
 
 6
 In this case there is not even uniformity of opinion among the states as to which words best disclose the nature of the product. North Carolina is the only state requiring the word 'reprocessed.' Certainly in such a situation the Federal Trade Commission is not prohibited from requiring a more precise disclosure simply because the petitioner sells a substantial proportion of its product in that state.
 
 
 7
 However, we think that the order of the Commission in this case does not in reality conflict with the North Carolina law. The state statute does not prohibit the use of additional descriptive words, and the Commission has indicated that it is not the use of the word 'reprocessed' which it considers deceptive, but rather the failure to make the additional specific disclosure that the reprocessed oil had been previously used. The order is clearly not in conflict with the state's requirement, and the petitioner can readily comply with both.
 
 
 8
 Nor is there any merit in the petitioner's contention that he has been 'deprived of the equal protection of the North Carolina law.' If the petitioner, who engages in interstate commerce finds himself with less latitude in his methods of competition than the North Carolina law permits his intrastate competitors, this furnishes him no ground of complaint. The Supreme Court has held that intrastate commerce is not subject to federal regulation even though it may competitively affect interstate commerce, Federal Trade Commission v. Bunte Brothers, Inc., 1941, 312 U.S. 349, 61 S.Ct. 580, 85 L.Ed. 881; but certainly the Federal Trade Commission does not lose its jurisdiction over interstate commerce merely because it is in competition with intrastate activities beyond federal control.
 
 II
 
 9
 The petitioner next asserts that the record affords insufficient basis for the Commission's order. It is claimed that in other cases the Commission indicated its view that 'reprocessed' alone would be a legally sufficient description, and that to overcome the effect of these decisions, the trial examiner attempted in the present proceedings to prove by the testimony of witnesses that 'reprocessed' was not a sufficient disclosure. The petitioner asserts that the trial examiner failed in this attempt, because none of the witnesses testified that they were led by the label to believe the petitioner's cans contained new oil.
 
 
 10
 A. The opinions of the Commission from which the petitioner argues that 'reprocessed' was deemed a sufficient disclosure are Pennsylvania Oil Terminal, Inc., 48 F.T.C. 356 (1951) and several cases pending before the Commission when the present case was considered: Double Eagle Refining Co., Docket No. 6432, Salyer Refining Co., Inc., Docket No. 6339, and Mohawk Refining, Inc., Docket No. 6588. Typical of the language upon which the petitioner relies is the following passage from Pennsylvania Oil Terminal, Inc., supra:
 
 
 11
 'In the absence of a disclosure on the containers that the oil therein is reclaimed or reprocessed, the general understanding and belief on the part of dealers and the purchasing public is that the oil sold in containers such as are used by respondents is, in fact, new oil and not reclaimed or reprocessed oil.'
 
 
 12
 In most of the cases to which the petitioner refers, the containers had no markings to indicate the character of the oil, and the Commission's attention was therefore not focused on the question of the exact language that would constitute a sufficient disclosure of former use. While, in its opinions, the Commission may have failed to follow every reference to 'reprocessed' or 'reclaimed' with the phrase 'from previously used motor oil,' an over-all reading indicates its view that the failure to disclose the oil's prior use was the core of the unfair and deceptive practice. This impression is certainly confirmed by the Commission's order in each of the cases cited by the respondent.
 
 
 13
 'It is ordered that the petitioners * * * do forthwith cease and desist from: * * *
 
 
 14
 '(2) Advertising, offering for sale or selling, any lubricating oil which is composed in whole or in part of oil which has been reclaimed or in any manner processed from previously used oil, without disclosing such prior use to the purchaser or potential purchaser in advertising and in sales promotion material, and by a clear and conspicuous statement to that effect on the container.'
 
 
 15
 Nothing in these orders can reasonably be interpreted as affording this petitioner encouragement to use the word 'reprocessed' with no additional words indicating the oil's previous use. In fact, the Salyer case suggested that the use of such a word alone would not be enough. There, after the complaint had been brought, the company added to its label the words 'Guaranteed Re-refined' and an explanation that reclaimed used oil was as good as or better than crude oil. The Commission affirmed the hearing examiner's finding that the words 'Guaranteed Re-refined' were insufficient to apprise the public that the oil was previously used, and that the explanation of what was meant by that phrase was inconspicuously placed and in such relatively small type that it would almost certainly escape the average purchaser's attention. It is plain from the Salyer opinion that the Commission was unwilling to accept a disclosure of previous use which appeared less prominently than the disclosure of the process to which the oil had been subjected.
 
 
 16
 B. At the hearing in this case, five witnesses were asked whether they could tell from petitioner's containers bearing the marking 'Reprocessed Oil' if the oil was new or previously used. None of these witnesses had any prior experience or acquaintance with reclaimed used oil. Some, it appears, readily understood that the cans contained used oil which had been repurified, while others were uncertain as to the character of the contents. Although such testimony was not a strong and conclusive indictment of the petitioner's label, it indicated that some prospective purchasers were deceived by its limited disclosure. This, coupled with the Commission's own observation of the labels and its experience in regulation, was enough for a conclusion that the label had a tendency to deceive. E. F. Drew & Co. v. Federal Trade Commission, 2 Cir., 1956, 235 F.2d 735.
 
 
 17
 The petitioner stresses that none of the witnesses was an expert or had ever purchased used oil, and on this basis argues that the sampling of 'opinion' was unfair. We think, however, that such witnesses are not always necessary. Neither customers who have actually been deceived, nor experts, need be produced where the exhibits themselves sufficiently demonstrate their capacity to deceive. Zenith Radio Corp. v. Federal Trade Commission, 7 Cir., 1944, 143 F.2d 29; New American Library of World Literature v. Federal Trade Commission, 2 Cir., 1954, 213 F.2d 143; Hillman Periodicals, Inc. v. Federal Trade Commission, 2 Cir., 1949, 174 F.2d 122.
 
 
 18
 The petitioners have advanced several other points which are basically variations of those discussed. We think that the manner in which we have determined the principal issues makes it unnecessary to pass upon the additional arguments.
 
 
 19
 The order of the Federal Trade Commission is
 
 
 20
 Affirmed.
 
 
 
 [1]
 Laws of North Carolina, 1953, Chapter 1137 (Article 2A, Sections 119-13.1, 119-13.2, 119-13.3 of the General Statutes of North Carolina)
 
 
 [2]
 South Carolina and Virginia have no statute requiring disclosure that oil has been previously used. The Maryland statute, (Code of Maryland, Art. 27, Sec. 231(a)) requires no particular words, but provides that it shall be unlawful to '* * * sell, expose for sale or offer for sale in any manner so as to deceive or tend to deceive the purchaser, any lubricating oil, * * * which had been once used for lubrication purposes and subsequently reclaimed, refined or reconditioned, without clearly indicating or setting forth such fact on the container, pump or distributing device used;'
 
 
 [3]
 The court said: 'But Congress, in the Federal Trade Commission Act, has assumed to legislate concerning 'unfair methods of competition' affecting interstate commerce and if any action by or any rule or regulation of the Chamber has that effect it is certainly subject to that act, no matter what the state has or has not authorized or permitted in that respect. Any action by the state Legislature or any decision of the state courts falls blunted if it strikes at this power which Congress vested and had constitutional authority to vest in the Commission.'