**MOHAWK REFINING CORPORATION,** a Corporation, and John E. C. Stroud, C. Kenneth Johnes and William L. Ashby, Individually and as Officers of Mohawk Refining Corporation, Petitioners,

v.

**FEDERAL TRADE COMMISSION,** Respondent.

No. 12606.

United States Court of Appeals Third Circuit.

Argued Nov. 21, 1958.

Decided Feb. 12, 1959.

Seymour Friedman, Washington, D. C. (Joseph H. Freehill, Washington, D. C., on the brief), for petitioner.

Emerson K. Elkins, Washington, D. C. (Earl W. Kintner, Gen. Counsel, James E. Corkey, Asst. Gen. Counsel, Federal Trade Commission, Washington, D. C., on the brief), for respondent.

Before BIGGS, Chief Judge, and MARIS and McLAUGHLIN, Circuit Judges.

BIGGS, Chief Judge.

The Federal Trade Commission charged that the petitioners, in violation of Section 5(a) of the Federal Trade Commission Act, 66 Stat. 632, 15 U.S.C.A. § 45(a) (1952), engaged in the business of "reclaiming used motor oil and in selling and distributing such lubricating oil, or a blend of such oil and new oil, in [interstate] commerce to jobbers and dealers for resale to the purchasing public"; that the petitioners' oil consisted "in whole or in substantial part of used motor oil, obtained from drainings of motor crankcases and from other sources, which has been reclaimed by subjecting the used oil to a treatment designed to remove the impurities therefrom"; that the petitioners' "[O]il * * * [was] sold in containers of the same general size, kind and appearance as those used for new oil, and has the appearance of new and unused oil"; that "The containers have no markings of any kind indicating that * * * [the] product is reclaimed used oil"; and that the petitioners' practices mislead the dealers who in turn mislead the purchasing public into believing erroneously that the petitioners' oil is "new oil".

The proof offered before the Hearing Examiner demonstrates that the petitioners do not engage in the business of "reclaiming" used motor oil except as a necessary preliminary to their re-refining process, and that the petitioners' finished product results from a series of processes which may be defined as re-refining crankcase drainings of previously used lubricating oils to produce a finished motor lubricating oil though sometimes the oil re-refined is blended with "crude" oil not used prior to its use by the petitioners and sometimes called virgin oil.[1] It appears also that the petitioners' lubri-

---

1. Both witnesses and counsel, the Hearing Examiner and the Commission, on occasion have used the term "new oil" to refer to lubricating motor oil refined from virgin oil, crude oil and have employed the term "used oil" to refer to lubricating motor oil re-refined from used crankcase oil.

cating oil is sold by them in interstate commerce under various brand names in containers which do not disclose that the oil is re-refined from used oil and that many purchasers have been deceived or misled into buying the petitioners' oil thinking it to be oil refined from crude oil, virgin oil, not oil previously used in motor crankcases; that during each of the years 1954 and 1955 the petitioners sold approximately two million gallons of oil, from which they realized about $500,-000; and that of this total between 75% and 90% represented oil produced by the petitioners by their re-refining processes as distinguished from crude oil purchased by them for blending purposes; and that the sales of the petitioners in interstate commerce were substantial and in competition with individuals, firms and corporations engaged in the production and sale of lubricating oil.

The record also shows that the Society of Automotive Engineers' viscosity rating of the petitioners' oils was up to the standards required by the trade, and no charge or implication was or is made that their oil was lacking in lubricating qualities, in efficiency, or in adaptability for the purpose for which it is sold, or was in any respect inferior to lubricating oil refined from crude oil, virgin oil. The proof shows also that many jobbers and members of the purchasing public prefer to buy oil refined from crude oil, virgin oil, as opposed to oil such as the petitioners' which has been re-refined from oil previously used, and that the public buys motor oil largely on the basis of price, believing that higher priced oils will give better service in a motor vehicle.

The Commission entered an order requiring the petitioners forthwith to cease and desist "from representing * * * that their lubricating oil is refined or processed from other than previously used oil" and from advertising, offering for sale or selling oil which has been "reclaimed or in any manner processed from previously used oil, without disclosing such prior use to the purchaser or potential purchaser in advertising, in sales promotion material, and by a clear and conspicuous statement to that effect on the container." The petition to review followed.

The petitioners attack the opinion and the final order of the Commission as arbitrary and capricious and contend that each lacks substantial supporting evidence. They assert also that the Commission erred as a matter of law in holding that the failure to disclose the source or origin of the petitioners' finished product was a violation of Section 5 of the Federal Trade Commission Act. The petitioners contend as well that the Commission committed prejudicial error in excluding from the record the testimony of certain witnesses and exhibits offered by them and in refusing to permit them to examine certain Commission records and correspondence on which, it is alleged, the Commission wrongfully relied.

It will be observed that there was a variance between the charge set out in the complaint and the proof in that the Commission charged the petitioners with selling "reclaimed" oil, as distinguished from "re-refined" oil. Even were the proceedings before the Commission conducted as strictly as a suit at law this variance would be deemed too insubstantial to be material. The evidence offered by the Commission's witnesses demonstrated that the petitioners produce their lubricating oil by re-refining and that the factor of reclamation was a minor one. The evidence shows also that without notification to the trade and to the customer that the petitioners' oil was not manufactured from crude oil, virgin oil, many persons in the trade and individual customers thought that the petitioners' product was manufactured from crude oil. The record proves further that such persons preferred to distribute and sell and to buy lubricating oil manufactured from crude oil or virgin oil, and not oil re-refined from crankcase oil, and thought that they were doing so. Accordingly, there was sufficient evidence upon which the Commission could find that dealers and the purchasing public

were misled by a mistaken belief that petitioners' products were derived from crude oil.

■ It is true, as the petitioners point out and as the Commission found, that the petitioners' oil is as satisfactory for lubricating purposes as lubricating oil produced from crude oil or virgin oil, but this is beside the point. As was said by the Supreme Court through Mr. Justice Cardozo in Federal Trade Commission v. Algoma Lumber Co., 1934, 291 U.S. 67, 77–78, 54 S.Ct. 315, 319, 78 L.Ed. 655: "We have yet to make it plain that the substitution would be unfair though equivalence were shown. * * * The consumer is prejudiced if upon giving an order for one thing, he is supplied with something else. * * * In such matters, the public is entitled to get what it chooses, though the choice may be dictated by caprice or by fashion or perhaps by ignorance. * * * Dealers and manufacturers are prejudiced when orders that would have come to them if the lumber had been rightfully named, are diverted to others whose methods are less scrupulous." Moreover, it does not serve to palliate the petitioners' offense by the fact that their sin was one of omission in failing to label the containers or make known to the purchasers that their oil was not produced from crude oil. Chief Judge Parker put this succinctly in P. Lorillard Co. v. Federal Trade Commission, 4 Cir., 1950, 186 F.2d 52, 58, when he said: "To tell less than the whole truth is a well known method of deception; and he who deceives by resorting to such method cannot excuse the deception by relying upon the truthfulness per se of the partial truth by which it has been accomplished."

■ The petitioners assert as a defense that there was no showing here of a specific and substantial public interest because their products are identical with all other finished motor oils as to composition, quality and utility and hence no harm can come to the purchasers or to the public generally. But as has been indicated the public is entitled to buy what it chooses. A manufacturer may not surreptitiously substitute his judgment for that of the purchaser as to the article to be purchased, even if the manufacturer's judgment is equal or even superior to that of the dealer or the customer. If this were not so, the substituted judgment of the manufacturer would always prevail over the will of the dealer or customer and the provision of the statute prohibiting unfair and deceptive practices would be emasculated. The public has the right to purchase motor oil manufactured from crude oil, if it desires to do so, and that desire may not be balked by a failure to disclose pertinent facts.

■ For the reasons stated the Commission did not err in striking from the record evidence of two expert witnesses of the petitioners who testified that it was not the industry practice to disclose to the trade or to the purchasing public the sources of motor oils and that these are bought and sold on the basis of grades established by the Society of Automotive Engineers and service classifications made by the American Petroleum Institute. These facts are immaterial to the issue raised by the Commission or on the instant appeal. The fact that some dealers and some customers were not misled by the petitioners' practices, even if such persons were in large numbers, is irrelevant. As we have said the record amply demonstrates a desire on the part of the dealers and purchasing public not to dispense or buy motor oils re-refined from crankcase drainings. Cf. Federal Trade Commission v. Winsted Hosiery Co., 1922, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729, and Independent Directory Corp. v. Federal Trade Commission, 2 Cir., 1951, 188 F.2d 468, 471.

■ The petitioners also contend that the Commission committed error by withholding from them and from the record in the instant case correspondence between the Commission's staff and witnesses who appeared on behalf of the Commission. They assert that by such correspondence witnesses testifying on behalf of the Commission on the factual issue as to whether or not the public had

a preference for motor oils refined from crude oil, virgin oil, as distinguished from motor oils re-refined from crankcase drainings, might have been and were unduly influenced. The petitioners assert also that, being deprived of this correspondence they were limited in their cross-examination.

The hearings before the Hearing Examiner began on September 20 and were concluded on December 11, 1956, being held on six different days. The fourth day of hearing was November 20. It then appeared, apparently for the first time, that witnesses appearing on behalf of the Commission had received the letters referred to. On that day petitioners' counsel moved orally that the Hearing Examiner require the Commissioner to produce all the correspondence.[2] The Hearing Examiner stated that though he felt that the correspondence should be produced that he could not require the Commission to produce it. It was not until April 26, 1957 that the petitioners filed a motion with the Hearing Examiner that the correspondence should be produced and incorporated in the record. The matter was referred to the Commission. The Commission, by an administrative order dated May 10, 1957, denied the motion, stating that the information sought was confidential and the correspondence could be released only pursuant to the provisions of the Commission's Rules, Section 1.134(b).[3]

We cannot say that "good cause" was shown as to why the correspondence should have been produced. Petitioners' assertion that there was actual influence exerted by the Commission through the correspondence is not supported by the record. Petitioners' reference to testimony of witnesses who had received questionnaires establishes no more than that the witnesses were made aware through the questionnaires of re-refined, reprocessed, or reclaimed oil as distinguished from crude, virgin, oil.

Moreover, the formal motion for production and incorporation in the record was not made to the Hearing Examiner until more than four months after the termination of the hearings and nearly one month after the petitioners had submitted proposed findings of fact and conclusions of law to the Trial Examiner. The validity of the Commission's Rules of Practice is not questioned by petitioners and in view of the delay it was not error for the Commission, relying upon Section 1.134(b), to deny the motion. Cf. N. L. R. B. v. General Armature & Mfg. Co., 3 Cir., 1951, 192 F.2d 316; N. L. R. B. v. Adhesive Products Corp., 2 Cir., 1958, 258 F.2d 403, 406.

We can perceive no error in the Commission's decision. Consequently, it will be affirmed. An appropriate judgment will be entered in this court requiring the petitioners to comply with the order of the Commission.

2.  One letter, dated October 11, 1956, from the Federal Trade Commission to Topline Store was produced by trial counsel for the Commission from his file and was introduced as respondents' (here petitioners') exhibit No. 1. It is in the form of a questionnaire and dealt in substance with the issue of whether or not the motor oil was invoiced to Topline as re-refined oil and whether it was represented by Topline to its customers as re-refined oil and similar questions, with Topline's answers thereto.

3.  16 C.F.R. § 1.134 (Supp.1958) states: "§ 1.134 *Release of confidential information.* (a) Upon good cause shown, the Commission may by order direct that certain records, files, papers, or information be disclosed to a particular applicant.
 "(b) Application by a member of the public for such disclosure shall be in writing, under oath, setting forth the interest of the applicant in the subject matter; a description of the specific information, files, documents, or other material inspection of which is requested; whether copies are desired; and the purpose for which the information or material, or copies, will be used if the application is granted. Upon receipt of such an application the Commission will take action thereon, having due regard to statutory restrictions, its rules, and the public interest."