265 F.2d 246
 Frank A. KERRAN and Cameron A. Kerran, Individuals and
Copartners Trading and Doing Business as Double
Eagle Refining Company, Petitioners,
v.
FEDERAL TRADE COMMISSION, Respondent.
 No. 5850.
 United States Court of Appeals Tenth Circuit.
 March 19, 1959.
 
 Josh Lee, Oklahoma City, Okl. (John B. Ogden, Oklahoma City, Okl., on the brief), for petitioners.
 E. K. Elkins, Washington, D.C. (Earl W. Kintner, General Counsel, and James E. Corkey, Asst. General Counsel, Washington, D.C., on the brief), for respondent.
 Before BRATTON, Chief Judge, and PICKETT and BREITENSTEIN, Circuit judges.
 BRATTON, Chief Judge.
 
 
 1
 This proceeding is here on petition to review an order of the Federal Trade Commission. Petitioners Frank A. Kerran and Cameron A. Kerran, partners doing business under the trade name of Double Eagle Refining Company, at Oklahoma City, Oklahoma, are engaged in the business of re-refining previously used lubricating oil, principally crankcase drainings collected at gasoline stations; packaging the re-refined oil in tin cans of the same general size, kind, and appearance as those used for packaging lubricating oil produced directly from virgin crude; and selling the re-refined oil without indicating on the containers or otherwise that the commodity is produced from previously used oil. Some of the supply of previously used oil comes to the refinery of petitioners from other states, and some of the finished product is sold and distributed in interstate commerce. The order of the Commission required petitioners to cease and desist from representing, contrary to the fact, that their lubricating oil is refined or processed from other than previously used oil; and from advertising, offering for sale, or selling lubricating oil that is composed in whole or in part of oil which had been reclaimed or in any manner processed from previously used oil, without disclosing such prior use to the purchaser or potential purchaser in advertising and sales promotion material, and by a clear and conspicuous statement to that effect on the container.
 
 
 2
 The order is challenged upon the ground that the Commission erred in holding that the methods of competition employed by the petitioners are unfair, because the Commission did not base its decision upon all of the pertinent facts of record but upon only a minor part of them; because there is little likelihood that the public is misled since re-refined oil is identical to that which is refined directly from virgin crude; because when previously used oil is re-refined it loses its identity as previously used oil and is new oil in every sense of the term; and because the circumstances which must accompany seller silence in order for it to constitute an unfair method of competition are not present in the proceeding. It is the position of petitioners that lubricating oil does not wear out; that use does not change the chemical composition of the oil or its molecular structure but merely contaminates it; that contamination from use as well as additives put into the oil by the prior producer are eliminated by the re-refining process; that the re-refined oil which petitioners sell is new oil; and that such re-refined product is the equivalent in quality of lubricating oil produced from virgin crude. Evidence was adduced at the hearing before the hearing examiner to the effect that lubricating oil does not wear out with use; that use does not change the chemical composition of the oil or its molecular structure but merely contaminates it; and that contamination from use as well as additives put into the oil by the prior producer are eliminated by the re-refining process. But the hearing examiner in the first instance found in effect that a substantial portion of the public who purchase lubricating oil prefer new and unused oil to that produced by the re-refining of crankcase drainings and other previously used oil; that the failure of petitioners to disclose that their oil is made from previously used oil has a tendency and capacity to mislead and deceive a substantial portion of the purchasing public into the belief that such oil is new and unused made from virgin crude oil; and that such failure has a tendency and capacity to cause such members of the public to purchase petitioners' oil as a result of the erroneous and mistaken belief so engendered. These crucial findings were adopted by the Commission. They were adequately sustained by evidence adduced upon the hearing and therefore must stand on review. It may be that lubricating oil does not wear out with use. It may be that use does not change the chemical composition or molecular structure of oil. It may be that contamination from use and additives put into oil by the prior producer are eliminated by the re-refining process of petitioners, and it may be that the oil sold by petitioners is just as good in quality as lubricating oil produced from virgin crude. But the public is entitled to know the facts with respect to the lubricating oil sold by the petitioners being produced from previously used oil and then make its own chocie with respect to purchasing such oil or oil produced from virgin crude, even though the choice is predicated at least in part upon ill-founded sentiment, belief, or caprice. Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 54 S.Ct. 315, 78 L.Ed. 655. And therefore the practice of the petitioners in marketing their re-refined lubricating oil in containers indistinguishable from those used generally to market lubricating oil refined from virgin crude, without any disclosure that it is made from previously used oil, constitutes a deceptive practice within the intent and meaning of section 5(a) of the Federal Trade Commission Act, as amended, 52 Stat. 111, 15 U.S.C.A. 45(a). Mohawk Refining Corp. v. Federal Trade Commission, 3 Cir., 263 F.2d 818; Royal Oil Corp. v. Federal Trade Commission, 4 Cir., 262 F.2d 741.
 
 
 3
 Petitioners urge further that the order of the Commission is invalid because the purchasing public is not prejudiced by their methods of competition since the public preference is for quality in lubricating oil and not for any particular origin; because the competitors of petitioners are not prejudiced by the methods of competition which petitioners practice since petitioners do not enjoy any unfair advantage over their competitiors; because enforcement of the order would result in actually restricting competition since it would destroy the business of petitioners and other re-refiners and thereby eliminate them as potential competitors of the major oil companies; because it is contrary to public policy to require useless disclosures which would result in injury to a company engaged in the business of re-refining oil and selling it in interstate commerce; and because it would result in wasting unnecessarily a precious natural resource. The general trend of the argument in support of the several grounds of challenge to the order is that the practices of petitioners do not prejudice the public; that they do not prejudice the competitors of petitioners; that disclosure would result in injury to the business of petitioners; and that disclosure would result in waste of a natural resource. But section 5(a) of the Act, supra, as amended in 1938, declares unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce to be unlawful; and with exceptions not having any present material bearing, it empowers the Commission to prevent such methods, acts, or practices. Under the statute, as amended, the Commission is vested with power to prevent the use of unfair methods of competition in commerce and also to prevent the use of unfair or deceptive acts of practices in commerce. Under the enlarged sweep of the statute, the Commission may take appropriate action to prevent unfair or deceptive practices in commerce which are inimical to the public interest. Thomas v. Federal Trade Commission, 10 Cir., 116 F.2d 347; Wolf v. Federal Trade Commission, 7 Cir., 135 F.2d 564; Globe Cardboard Novelty Co. v. Federal Trade Commission, 3 Cir., 192 F.2d 444; Koch v. Federal Trade Commission, 6 Cir., 206 F.2d 311. The vice in the acts and practices of petitioners lies in the deception of the purchasing public of lubricating oil with respect to the oil sold by petitioners being re-refined oil instead of refined oil from virgin crude. And that vice constitutes an unfair and deceptive business practice within the intent and meaning of section 5 of the Act, supra. Mohawk Refining Corp. v. Federal Trade Commission, supra; Royal Oil Corp. v. Federal Trade Commission, supra.
 
 
 4
 A decree will be entered affirming and enforcing the order of the Commission.
 
 
 5
 BREITENSTEIN, Circuit Judge (dissenting).
 
 
 6
 The majority opinion sustains the Federal Trade Commission in requiring the manufacturer of an admittedly high quality domestic product to disclose in its advertising and on its container labels the source of its product. It does so in the absence of any claim that such manufacturer has ever made a deceptive or misleading statement in connection with the marketing of the product, re-refined lubricating oil. A deceptive practice is said to result from the marketing of the product 'in containers indistinguishable from those used generally to market lubricating oil refined from virgin crude, without any disclosure that it is made from previously used oil.' The deception is inferred from the assumption that the buying public prefers a lubricant produced from so-called virgin crude oil.
 
 
 7
 Certain facts shown by the uncontradicted evidence are pertinent. After crude oil is taken from the ground it is refined first to secure the more volatile distillates such as gasoline. The residuum us then refined again to obtain lurbricating oils. Oil does not lose its chemical composition or its molecular structure by use. It does not wear out. The petitioner takes oil which has been drained from automobile crankcases and refines it just as the residuum of crude oil is refined after the capture of the more volatile distillates. The product so obtained has as high quality as that obtained from the residuum of the gasoline distillation.
 
 
 8
 Many minerals are processed and reprocessed and used and re-used over and over again. In this regard oil is no different from iron, gold and silver. The saving, accumulation, reprocessing and re-use of dental gold, silver ornaments and automobile steel does not differ in basic concept from the similar operations in regard to oil disclosed by this record.[1] The assumption that a purchaser is deceived when he buys a good oil derived from a secondary processing operation is no different from an assumption that a purchaser of a new automobile is deceived if the steel in that automobile has been derived from the processing of scrap iron obtained from a junk yard.
 
 
 9
 Section 5(a) of the Federal Trade Commission Act, as amended,[2] empowers and directs the Commission to prevent the use of 'unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce.' Here the unfair method and the unfair or deceptive practice are said to arise from the use of the same type container as that used by manufacturers who produce from virgin crude and from the failure to disclose on the container that the lubricant is produced from previously used oil. There is nothing unfair or deceptive in using the same, common tin can type of container that is used for a multitude of products. The action of the Commission depends solely on the fact that the source of the oil is not disclosed.
 
 
 10
 With due deference to administrative expertness in fact finding, I see nothing in the record to sustain a finding that the public prefers lubricating oil produced from virgin crude. As testified, in substance, by the only witness who covered the attitude of the public,[3] the purchaser desires quality and buys by brand names. Granting that a purchaser is entitled to get what he asks for, even if he is put off with something as good or better,[4] quality is material in determining whether there is customer deception in circumstances where there is no misrepresentation. The fact that a buyer desires a good oil or a brand oil does not mean that he has any interest in the origin of that oil. The assumption that the public prefers a lubricant produced from virgin crude does not follow from the fact that the public seeks to buy a good oil. Yet the Commission makes such an assumption and from it finds a deception.
 
 
 11
 The product involved here is admittedly of high quality and the petitioner has admittedly made no false statements in regard to either the product or its use. Hence this is not a case for the Commission to exercise its well-recognized negative power of preventing falsity by forbidding certain conduct. Instead it is one where the Commission exercises an affirmative power to require a statement as to origin for the prevention of a falsity which is not shown to exist.
 
 
 12
 In the foreign origin cases the power of the Commission to require an affirmative disclosure of origin has been upheld.[5] In such cases the assumption of a popular preference for homemade goods is entirely reasonable and is supported by the provision of the tariff laws requiring the marking of imported goods with the name of the country of origin.[6]
 
 
 13
 Royal Oil Corp. v. Federal Trade Commission, 4 Cir., 262 F.2d 741, involved reclaimed, not re-refined, oil,[7] and did not discuss the issues raised in this case. It is obvious that the sale of reclaimed oil without appropriate disclosure may be a deception. The same conclusion does not follow when the oil is re-refined as then the quality is as high as that found in oil produced from virgin crude.
 
 
 14
 Mohawk Refining Corp. v. Federal Trade Commission, 3 Cir., 263 F.2d 818, affirmed an order similar to that involved here and did so in a case concerning re-refined oil. Reliance was placed on the statement in Federal Trade Commission v. Algoma Lumber Co., 291 U.S. 67, 78, 54 S.Ct. 315, 78 L.Ed. 655, that the public is entitled to get what it chooses, though the choice be dictated by caprice or ignorance. Algoma was a case of mislabeling.[8] Neither in Mohawk nor in the case at bar was there any false labeling. Although the right to make a capricious or ignorant choice is protected against misrepresentation, the recognition of such right does not require that a manufacturer foresee caprice or ignorance and not only refrain from misrepresentation but also affirmatively state every fact regarding his product which might conceivably be deemed important by the prejudiced and uninformed.
 
 
 15
 Mohawk quotes approvingly from P. Lorillard Co. v. Federal Trade Commission, 4 Cir., 186 F.2d 52, 58, that: 'To tell less than the whole truth is a well known method of deception * * *.' The validity of such statement is unquestionable but it has no applicability. The omission here of the statement of source has no relation to the quality or usability of the product. Nondisclosure may amount to a deceptive practice when it is accompanied by an affirmative act calculated to deceive, when it has a bearing on quality or usability, or when the non-disclosed facts pertain to national policy. None of these situations is found here.
 
 
 16
 It may be that advertisements and labels should be much more informative than they ordinarily are in current custom and practice. But Congress has never given to the Commission unrestricted power affirmatively to require informative statements. Its pertinent power is limited to the prevention of unfair methods of competition and unfair or deceptive acts or practices in commerce. Granting that the Commission is the expert body to determine the remedy necessary to eliminate such methods or practices,[9] nevertheless, the affirmative function of requiring informative disclosures may only be exercised to prevent unfairness or deception.[10] Believing as I do that nondisclosure of source of origin of product, standing alone and unaccompanied by any of the factors which I have mentioned, does not constitute unfairness or deception, I am brought to the conclusion that there is no rational basis for the findings, and no legal basis for the order, of the Commission. It is not necessary to comment on the far-reaching implications of the Commission's action under present conditions wherein scientific advances establish methods of reprocessing without loss of quality and thus permit the use and re-use of many substances which are in limited supply.
 
 
 17
 I most respectfully dissent from the opinion of my associates.
 
 
 
 [1]
 The most common use and re-use of a natural resource probably occurs in the utilization of water
 
 
 [2]
 15 U.S.C.A. 45(a)
 
 
 [3]
 The witness, a distributor for a major oil company, was called by and testified for the Commission
 
 
 [4]
 See Ohio Leather Co. v. Federal Trade Commission, 6 Cir., 45 F.2d 39, 41
 
 
 [5]
 Eg. L. Heller & Son v. Federal Trade Commission, 7 Cir., 191 F.2d 954; American Tack Co. v. Federal Trade Commission, 2 Cir., 211 F.2d 239
 
 
 [6]
 See 19 U.S.C.A. 1304
 
 
 [7]
 Reclaimed oil is used oil which has been strained or otherwise treated to remove contaminants. Re-refined oil is oil that has been produced by a refining process similar to that used in producing oil from virgin crude
 
 
 [8]
 'Yellow pine' lumber was falsely labeled as 'white pine.'
 
 
 [9]
 Jacob Siegel Co. v. Federal Trade Commission, 327 U.S. 608, 612, 66 S.Ct. 758, 90 L.Ed. 888
 
 
 [10]
 Cf. Alberty v. Federal Trade Commission, 86 U.S.App.D.C. 238, 182 F.2d 36, 39, certiorari denied 340 U.S. 818, 71 S.Ct. 49, 95 L.Ed. 601